Zimmerman, J.
 

 It appears from the record that on May 18, 1931, the council of the city of Cleveland adopted a resolution of necessity, pertaining to the described improvement, which recited “It is hereby determined that said lots and lands are especially benefited by said improvement.”
 

 The original estimate provided for an overall cost of $198,340, of which amount $182,135 was to be borne by the abutting properties and $16,205 by the city. Such estimate contemplated a prospective assessment of the abutting properties at the rate of more than $40 per front foot. Later, the estimate was revised so as to increase the amount of the cost to the city and lessen materially the amount of the assessments.
 

 
 *471
 
 On November
 
 4,
 
 1931, the city council passed an assessing ordinance levying a total assessment of $12,780 against plaintiff’s real estate, at the rate of $12 per front foot, payable in annual instalments from 1932 through 1941. Plaintiff paid the first one and one-half instalments, which it now seeks to recover. There is no suggestion of any irregularities or omissions on the part of the assessing authority up to this point.
 

 For the reason that the city found itself unable to finance the cost of the improvement assumed by it, nothing further was done for a period of several years.
 

 On May 27, 1937, the city council adopted a resolution remitting accrued interest on the assessment levied, of 27% per cent, providing the owners of the affected properties would pay the total amount of the respective assessments. Notice of council’s proposal was thereafter sent to each owner. All paid on the terms offered except the plaintiff', which made no response.
 

 Then, on March 14, 1938, the city council passed an ordinance, purportedly under Section 167 of the Cleveland city charter, to proceed with the improvement by the direct employment of the necessary labor and the purchase of the necessary supplies and materials, the project to be carried forward in conjunction with the Works Progress Administration of the federal government. Soon thereafter an agreement was executed between the city and the Works Progress Administration. The improvement was undertaken, and finished on October 18, 1939, at an overall cost of $357,493, of which amount the city actually paid $64,827.53, exclusive of the services of its engineers and other of its regular employees.
 

 The improvement was carried through in substantial accord with the plans adopted in 1931. Five weeks after its completion the present action was brought.
 

 As to plaintiff’s first contention that the assessment
 
 *472
 
 against its property is materially in excess of the benefits conferred, evidence was introduced by the city that before the improvement the total value of plaintiff’s two parcels of real estate was $86,230 and that afterwards the value was $71,060. It was also developed that such real estate was situated in an industrial district where an appreciation of land values might reasonably be anticipated.
 

 Testimony was offered that as of November, 1940, plaintiff had listed its property for sale with real estate brokers at a price of $80,000.
 

 Section 3819, General Code, reads:
 

 “The council shall limit all assessments to the special benefits conferred upon the property assessed, and in no case shall there be levied upon any lot or parcel of land in the corporation any assessment or assessments for any or all purposes, within a period of five years, to exceed thirty-three and one-third percent of the actual value thereof after improvement is made * *
 

 As has already been noted, the Cleveland city council specifically declared that the property affected would be specially benefited by the improvement. Evidence is present in the record (including testimony that after the making of the improvement Walworth avenue was open to and used by all kinds of vehicular traffic, which was not theretofore so) from which the lower courts could have found, as they apparently did, that the amount of the assessment levied was not unjust or disproportionate to the benefits conferred.
 

 It is generally recognized that the circumstance that the estimated increase in the value of property by reason of an improvement does not equal or exceed the amount of the assessment, is not controlling of the question of benefits. 36 Ohio Jurisprudence, 926, Section 17.
 

 Evidence was likewise before the lower courts to
 
 *473
 
 justify a finding that the amount of the assessment levied did not exceed thirty-three and one-third per cent of the value of the real estate after the completion of the improvement. Therefore, no situation arises which would invoke the principle that an assessment is invalid on constitutional grounds, which approaches or is greater in amount than the value of the property after an improvement has been finished.
 
 Domito
 
 v.
 
 Village of
 
 Maumee, 140 Ohio St., 229, 42 N. E. (2d), 984.
 

 We can discover no reversible error in the judgments below concerns this phase of the controversy.
 

 Next we come to plaintiff’s contention that the improvement was abandoned by delay in its execution and that the method employed in finally going forward with it was unauthorized and illegal, invalidating the assessment.
 

 True, an extended period did elapse between the levy of the assessment and the making- of the improvement, but this fact is not so conclusive that we can or should disturb the judgments of the lower courts by an independent.determination that there was an intention by the city to abandon the project, coupled with such inaction as to effectuate such intention. And it is to be remembered that plaintiff took no steps in relation to the assessment against its property until, after the improvement was finished.
 

 ■ Plaintiff insists that an abandonment was shown and the assessment avoided by the fact that in 1931, when the assessment was levied, it had been decided that the contract for the improvement should be let by competitive bidding, whereas the improvement was actually carried out as a W. P. A. project in which the federal government furnished most of the labor and the city most of the materials and supplies.
 

 It is further claimed by plaintiff that Section 167 of the Cleveland city charter authorized only one of two
 
 *474
 
 methods of procedure in connection with the improvement; (1) the letting of a contract therefor by competitive bidding, or (2) the- employment of labor directly by the city and the furnishing of the materials by it, and that since neither method was followed, there was a total lack of authority to proceed.
 

 While the bill of exceptions would indicate that plaintiff introduced in evidence, as exhibits, a copy of the Cleveland city charter and a copy of the contract between the city and the Works Progress Administration, they are not included in the printed record nor do they seem to be on file with the papers in the case.
 

 Be that as it may, we deem plaintiff’s objection of a technical sort, and are of the opinion that there was not such a radical departure or deviation from the provisions of the charter mentioned as to nullify the program, including the assessment against plaintiff’s property.
 

 Plaintiff is correct in its statement that the project cost the city less than would have been so had the improvement gone forward under the revised plan as adopted in 1931. However, plaintiff cannot fairly complain of that, nor is it actually prejudiced so long as the assessment against its property was not increased and there was no violation of Section 3819, G-eneral Code.
 

 And how was plaintiff harmed so far as this case is concerned by the circumstance that the improvement was made with the assistance of the W. P. A
 
 J
 
 The truth remains that the improvement was carried forward and completed in substantial conformity with the original plans, at no additional cost to the plaintiff. Surely, plaintiff knew what was going on, and the fact that it remained passive until the improvement was finished and its property had been benefited, is not in its favor.
 

 
 *475
 
 We are unable to discover sucb prejudicial error in the judgments below as to warrant reversal. The judgment of the Court of Appeals is therefore affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Bell and Turner, JJ., concur.
 

 Matthias, Hart and Williams, JJ., dissent.